ZAHER v MIOTKE

Docket No. 307394. Submitted March 5, 2013, at Detroit. Decided March 28, 2013, at 9:00 a.m.

Raji J. Zaher brought an action in the Genesee Circuit Court, Judith A. Fullerton, J., against Michael J. Miotke, seeking a preliminary injunction to return a joint driveway to the condition it had been in before Miotke made changes and a permanent injunction to enforce a joint-driveway easement. Miotke filed a counterclaim, seeking demolition of a garage constructed by Zaher, and a third-party action against Gregory L. and Linda M. Hoover and others. The actions arose from a dispute involving an easement for a joint driveway servicing adjacent real property owned by Zaher and Miotke. The property involved, lots 2 and 3 in a condominium development, was originally purchased by Gregory Hoover (Hoover) in his name alone. Hoover was married to Linda Hoover (Linda) at the time and Linda therefore acquired a dower interest in the property, although that interest would not vest unless or until Hoover died before Linda. Hoover hired Zaher to construct a house for him on lot 2 in exchange for transferring ownership of lot 3 to Zaher. Zaher constructed houses on both lots and, during the process, determined that a joint driveway easement over lot 2 was necessary for him to be able to use his garages on lot 3. Hoover, in his name alone, and without Linda's participation, signed a written joint-driveway easement, which was not recorded. After Zaher constructed the driveway, Hoover sold lot 2 and the house thereon to Miotke. Hoover and Linda both signed the warranty deed transferring Hoover's interest in the property to Miotke. Hoover and Linda then signed a warranty deed transferring Hoover's interest in lot 3 to Zaher. Both deeds provided that the property interest conveyed was subject to easements of record and both were recorded. Miotke thereafter removed some of the brick pavers from the driveway just inside his property's boundary line and planted rose bushes in their place. The result was that Zaher thereafter only had access to a 10-foot-wide portion of what had been a 30-foot wide joint driveway. The court granted Zaher's motion for a preliminary injunction but denied, in part, the parties' motions and cross-motions for summary disposition, holding that there remained questions of fact regarding, among other

things, whether Miotke was aware of the joint driveway use when the sale occurred. The court also granted partial summary disposition in favor of Zaher and denied Miotke's motion for summary disposition when it agreed with Zaher that the easement was not void *ab initio*. The court held that Linda had since waived her dower interest in lot 2 by joining Hoover's transfer of his fee interest to Miotke and thereby had cured any deficiency in the easement conveyance. The Court of Appeals granted Miotke's interlocutory application for leave to appeal in an unpublished order, entered July 27, 2012 (Docket No. 307394).

The Court of Appeals held:

An inchoate dower interest is an encumbrance on a husband's property that can be valued. Therefore, a purchaser who takes land subject to such an encumbrance can be recompensed without invalidating the conveyance. Although there may be notice issues nullifying Zaher's claimed easement, the transfer was not void under the statute of frauds. The trial court's grant of partial summary disposition in favor of Zaher is affirmed.

1. An easement is an interest in land that is subject to the statute of frauds. The statute of frauds provides that in order to transfer an interest in property, all parties possessing an interest in the subject property must sign the document. The granted easement clearly violated the statute of frauds because Linda did not sign the joint-easement document granting Zaher an easement over lot 2.

2. There is no precedent demanding that the Court of Appeals hold that an easement is invalid when the holder of only an inchoate dower interest in the property has failed to sign a contract conveying the easement.

3. A wife's dower interest is different from an ownership interest (a) because an inchoate dower interest might never ripen into a consummate possessory interest, (b) because, even if a wife elects to take her dower interest, a particular piece of her late husband's property might not be affected, and (c) the wife's interest has a finite term because she has only a life estate in her dower properties.

4. Only a wife may divest herself of her dower interest, her husband may not bargain it away.

5. Although MCL 566.108 provides that a contract that violates the statute of frauds "shall be void," the vast majority of the precedent that the Court of Appeals is bound to follow concludes that such a contract is not void.

6. An inchoate dower interest is merely a potential future limited possessory interest in land because if a wife survives her husband and has not waived her dower interest, she will become entitled to a one-third interest in the property. This is not an ownership interest that prevents a current transfer to another. The transfer of a property interest may stand despite a husband's failure to secure the release of his wife's inchoate dower rights. No precedent supports a holding that Zaher's easement across lot 2 was invalid from the outset.

7. A wife may bar her dower interest through a later transfer, thereby curing a defect in an earlier conveyance.

8. Because Linda extinguished her dower rights to lot 2 by joining Hoover's conveyance to Miotke, those rights no longer impair lot 2 or compete with Zaher's easement. Although Miotke might successfully challenge the easement on notice grounds, Linda's extinct dower rights are not a defense available to Miotke

Affirmed.

1. Easements — Statute of Frauds.

An easement is an interest in land that is subject to the statute of frauds; the statute of frauds requires all parties possessing an interest in the subject property to sign a document that transfers an interest in the property (MCL 566.106; MCL 566.108).

2. Easements — Dower and Curtesy — Inchoate Dower Interests.

An easement need not be declared invalid when the holder of only an inchoate dower interest in the property has failed to sign a contract conveying the easement because an inchoate dower interest is an encumbrance on a husband's property that can be valued and, therefore, a purchaser who takes land subject to such an encumbrance can be recompensed without invalidating the conveyance.

3. Dower and Curtesy — Inchoate Dower Interests — Waiver of Dower Interests.

A wife's dower interest is inchoate while her husband is alive and does not vest or become consummate until her husband's death; only a wife may divest herself of her dower interest, her husband may not bargain it away (MCL 558.1).

4. Dower and Curtesy — Inchoate Dower Interests.

An inchoate dower interest is merely a potential future interest under which a wife will become entitled to a one-third interest of her late husband's real property if the wife survives her husband

and has not waived her dower interest; dower confers on a wife a life estate to one-third of the husband's real property after his death (MCL 558.1).

5. DOWER AND CURTESY — BARRING DOWER INTERESTS.

A wife may bar her dower interest through a later transfer that cures a defect in an earlier conveyance (MCL 558.1).

*Rizik & Rizik* (by *George F. Rizik, II*) for plaintiff.

*Jason M. Ministrelli* for defendant.

Before: GLEICHER, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM. The question presented in this case is whether an easement is void *ab initio* or merely subject to a lien-type interest when the male owner of a servient estate violates the statute of frauds by granting an easement without securing his wife's waiver of her then inchoate dower interest. Consistent with long-standing precedent of the Michigan Supreme Court, an inchoate dower interest is an encumbrance on a husband's property that can be valued. Therefore, a purchaser who takes land subject to such an encumbrance can be recompensed without invalidating the conveyance.

In this case, defendant is the successor in interest to a husband who, without his wife's participation, granted an easement across his property in plaintiff's favor. The husband's wife has since waived her dower interest in the property and there is nothing left to encumber the easement transfer. Although there may be notice issues nullifying plaintiff's claimed easement, the transfer is not void under the statute of frauds. We affirm the circuit court's grant of partial summary disposition in plaintiff's favor.

I. BACKGROUND

In 2003, Gregory Hoover (Hoover), although married to Linda Hoover (Linda), purchased in his name alone contiguous lots 2 and 3 in the North Bay Shores site condominium development in Fenton. When Hoover bought the lots, Linda acquired a dower interest in the property, although that interest would not vest unless or until Hoover died before Linda. MCL 558.1. Hoover hired plaintiff, Raji Zaher, to construct a house for him on lot 2. In the construction contract, signed by Hoover without his wife, Hoover agreed to transfer ownership of lot 3 to Zaher as payment. Zaher built a home for Hoover on lot 2 and simultaneously constructed his own home on lot 3.

During the construction process, Zaher concluded that he would not have sufficient room to maneuver into his sideways-facing garages if his driveway occupied only his own lot. Accordingly, he sought and obtained a "joint driveway easement" over lot 2. Hoover signed a written easement on October 27, 2007, in his name alone and without his wife's participation. Neither Zaher nor Hoover recorded the easement. Thereafter, Zaher constructed a single, 30-foot-wide driveway straddling the boundary line between the lots. Twenty feet of the driveway's width was on lot 2, which was then owned by Hoover. The driveway was paved with a uniform brick pattern and shared a single entry ramp from the road.

On April 26, 2010, Hoover sold lot 2 along with the newly constructed home to defendant, Michael Miotke. Hoover and his wife, Linda, signed the warranty deed transferring Hoover's interest in the property. On August 30, 2010, Hoover and Linda signed a warranty deed transferring Hoover's interest in lot 3 to Zaher.

Both deeds were recorded. Both also provided that the property interest conveyed was subject to "easements of record."

In May 2011, Miotke removed a line of brick pavers just inside his property's boundary line and planted a row of rosebushes. Miotke claimed that his decision to divide the driveway coincided with his decision to have other masonry work performed on the property. Miotke also had his front porch repoured and installed a new pattern of brick pavers on the porch and "his" 20-foot portion of the driveway. Zaher, who was out of town at the time, returned to discover that he could no longer park his vehicles in his garages as he only had access to a 10-foot-wide portion of the driveway.

The current lawsuit ensued. Zaher sought a preliminary injunction to return the driveway to the condition it had been in before Miotke changed it and also a permanent injunction to enforce the joint-driveway easement. Miotke filed a counterclaim seeking demolition of Zaher's garages as they were constructed outside the "building envelope" allowed by the condominium development's master plan. Miotke also filed a third-party action against the Hoovers and their real estate broker for their alleged failure to advise him of the joint-driveway easement before closing the sale.

The circuit court granted Zaher's motion for a preliminary injunction and Miotke does not challenge that decision. The court thereafter denied the parties' motions and cross-motions for summary disposition, determining that there remained questions of fact regarding, among other issues, Miotke's awareness of the joint driveway use when the sale occurred. The court did, however, grant partial summary disposition in Zaher's favor on one issue. The court ruled, contrary to Miotke's protestations, that the easement over lot 2 was not

void or voidable from its inception even though Linda was not a party to the document and therefore did not release her inchoate dower interest in the encumbered lot 2.

Miotke continues to contend that the joint-driveway easement was void from its inception. Under the statute of frauds, MCL 566.106 and MCL 566.108, an easement is the transfer of a property interest and must be made in writing and signed by everyone with an interest in the property. Linda, although not a coowner of lot 2, obtained an inchoate dower interest in the property when her husband purchased it. And, according to Miotke, Linda did not waive her inchoate dower interest by joining the transfer of the easement to Zaher, rendering that transfer invalid.

Zaher counters that Linda's failure to sign the easement did not render the easement void; rather, Linda's failure to waive her inchoate dower interest at the time the easement was created "merely cloud[ed] the title to that grant." If Hoover died without Linda having waived her dower interest, then the property subject to the easement also would have become subject to Linda's realized dower interest. However, according to Zaher, Linda did waive her inchoate dower interest in lot 2 when she joined Hoover's transfer to Miotke through the warranty deed and no longer has an interest to claim in the property.

The circuit court agreed with Zaher that the easement was not void *ab initio*. The court concluded that the situation had to be "evaluated or reviewed" by "looking at it now, not then." The court held that Linda had since waived her dower interest in lot 2 by joining her husband's transfer of his fee interest to Miotke and thereby "cured" any deficiency in the easement conveyance. The court therefore granted partial summary

disposition in Zaher's favor and denied Miotke's motion for summary disposition on this limited issue.[1]

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id*. The motion should be granted only if no factual development could possibly justify recovery. *Id*.

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the

---

[1] Despite that several issues remained pending in the circuit court, this Court granted Miotke's interlocutory application for leave to appeal. *Zaher v Miotke*, unpublished order of the Court of Appeals, entered July 27, 2012 (Docket No. 307394).

benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

We review de novo underlying issues regarding the interpretation and applicability of a statute, such as the statute of frauds relied upon by the parties in this case. *Adams Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001).

### III. ANALYSIS

"An easement is an interest in land that is subject to the statute of frauds." *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998). The statute of frauds is codified at MCL 566.106, which provides:

> No estate or interest in lands ... shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides similar requirements for contracts covering the transfer of a property interest:

> Every contract ... for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing .... [2]

---

[2] Zaher incorrectly posits that MCL 566.108 is inapplicable because "[t]here was no contract to grant an easement in the future," only a document representing a contemporaneous conveyance. Zaher has cited *no support for this proposition*. Moreover, nothing in the language of MCL 566.108 suggests that a "contract ... for the sale of any lands, or any interest in lands" cannot be entered into at the same time as the conveyance.

The easement granted by Hoover over his property, lot 2, for the benefit of Zaher and his property, lot 3, was reduced to a written document. Under the statute of frauds, however, to transfer an interest in property, all parties possessing an interest in the subject property must sign the document. *Forge*, 458 Mich at 206 ("[a]ll owners of jointly held property must sign a contract conveying an interest in the property," e.g., an easement in *Forge*); *Slater Mgt Corp v Nash*, 212 Mich App 30, 32; 536 NW2d 843 (1995) (holding that the statute of frauds applies to a seller's wife holding only a dower interest in the property so the wife must sign the purchase agreement as well as the seller husband). It is undisputed that Hoover's wife, Linda, did not sign the document granting Zaher an easement over lot 2. Accordingly, the granted easement clearly violated the statute of frauds. The question then becomes one of remedy: should the easement be nullified as void from its creation, or is Linda's inchoate dower interest a cloud on the property's title that evaporated when Linda joined the warranty deed transferring the property and waived her dower rights?

In *Forge*, 458 Mich at 206, the Supreme Court held: "All owners of jointly held property must sign a contract conveying an interest in the property; the absence of a signature by a co-owner renders the contract void." Like the current case, *Forge* involved an action to enforce an easement. *Id.* at 201-202. However, Linda was not a coowner of lot 2; the property was held by Hoover alone, not jointly with his wife. There is no precedent demanding this Court to hold an easement invalid when the holder of only an inchoate dower

---

We further note that since its inception in the statutes of 1846, this provision has stated that transfers not conducted consistently with the statute "shall be void." 1846 RS, ch 80, § 8.

interest in the property has failed to sign a contract conveying the easement to the property.

A. THE NATURE OF DOWER INTERESTS

MCL 558.1 governs a wife's dower interest as follows: "The widow of every deceased person, shall be entitled to dower, or the use during her natural life, of ⅓ part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof." The statute, first enacted in 1846, codified the common-law rule of dower. *Redman v Shaw*, 300 Mich 314, 316; 1 NW2d 555 (1942). While a woman's husband is alive, she has only an inchoate dower interest; the right does not vest or become consummate until her husband's death. *Oades v Std S & L Ass'n*, 257 Mich 469, 473; 241 NW 262 (1932); *Cummings v Schreur*, 236 Mich 628, 630; 211 NW 25 (1926). Once she becomes a widow, a woman does not take a fee interest in one-third of her late husband's real property; she is entitled only to the use of one-third of the property. The widow's use extends only for the period comprising the remainder of her natural life. Basically, dower confers on a wife a life estate to one-third of her husband's real property after his death. *Stearns v Perrin*, 130 Mich 456, 459; 90 NW 297 (1902). See also 25 Am Jur 2d, Dower & Curtesy, § 1, pp 60-61; 28 CJS, Dower & Curtesy, §§ 1-5, pp 105-109.

A wife's dower interest is different from an ownership interest in several ways. First, an inchoate dower interest might never ripen into a consummate possessory interest. If a wife dies before her husband, her dower rights die with her. *Vanderlinde v Bankers Trust Co of Muskegon*, 270 Mich 599, 606; 259 NW 337 (1935). A wife's dower rights are barred if she and her husband

divorce before his death. See MCL 552.101(1) (requiring the court to include in a divorce judgment "a provision in lieu of the dower" to bar the wife's future dower claims). A husband might bequeath an inheritance to his wife in his will and the wife could elect to accept that inheritance in lieu of dower. See MCL 700.2202 (1)(a) and (b), (2)(a) (the surviving widow of an intestate decedent may elect to take her intestate share or her dower right and the surviving spouse of a testate decedent may elect to "abide by the terms of the will," take her dower right, or take a modified intestate share); see also *Vanderlinde*, 270 Mich at 605.

Second, even if a wife elects to take her dower interest, a particular piece of her late husband's property might not be affected. A wife has an interest in only one-third of her husband's property. She must file an action or petition the court to assign property to satisfy her dower interest. The court might assign the wife a one-third interest in each of her late husband's properties or it might grant her the use of a selected one-third of the properties. See, e.g., *Walker v Kelly*, 91 Mich 212, 217-218; 51 NW 934 (1892) (concluding that a widow's dower interest could be satisfied monetarily rather than by possession where the subject property was not the homestead of the widow's late husband at the time of his death).

Third, because a wife possesses only a life estate in her dower properties, her interest has a finite term. The property will not forever be subject to her claims and this cloud on the property's title will eventually and naturally be cleared.

B. EFFECT OF A WIFE'S FAILURE TO WAIVE HER DOWER INTEREST

Only a wife may divest herself of her dower interest; her husband "may not bargain [it] away . . . ." *Slater*,

212 Mich App at 32; *M & D Robinson Co v Dunitz*, 12 Mich App 5, 12; 162 NW2d 318 (1968). See also *Buchoz v Walker*, 19 Mich 224, 228 (1869). The language of MCL 566.108 provides that a contract that violates the statute of frauds "shall be void . . . ." And certain courts have held a contract void when a husband conveys away a property interest without securing his wife's waiver of her dower interest. However, the vast majority of precedent concludes that such a contract is not void and we are bound to follow those decisions.

28 CJS, Dower & Curtesy, § 55, p 145 provides:

> Inchoate dower is an *encumbrance* on the husband's estate. Although it has also been held to be in the nature of a lien upon the husband's land, it is not, at least not in the ordinary sense, a lien, since the estate or interest is contingent and the amount is uncertain and variable. [Emphasis added.]

A wife's inchoate dower interest can be valued to cure any improper transfer made without the wife's permission:

> [I]t is generally held that the present cash value of the inchoate right of dower is capable of computation, a common formula being to ascertain the present value of an annuity for the wife's life, equal to interest in a third of the proceeds of the estate to which her contingent right attaches, and then deduct the value of a similar annuity depending upon the joint lives of herself and her husband. Factors to be considered in determining the value include the relative ages, life expectancies, constitutions, and habits of the husband and wife[.] [28 CJS, Dower & Curtesy, § 59, p 147.]

In *Slater*, 212 Mich App at 32, this Court acknowledged that "[a] husband may not bargain away his wife's dower interest" and therefore a wife must sign any contract transferring her husband's interest in his sole property. *Slater* held that a purchase agreement

was "ineffective to convey marketable title" absent the seller's wife's signature. *Id.* at 33. Accordingly, the purchaser could take title to the property, but that interest would be subject to the seller's wife's inchoate dower interest and, upon the seller's death, his wife would become entitled to a one-third interest in the property. Thus, the purchase agreement was not void, but could transfer only a clouded title.

*Slater* held that *Berg-Powell Steel Co v Hartman Group*, 89 Mich App 423; 280 NW2d 557 (1979), controlled its decision. In *Berg*, the purchaser sought to back out of a purchase agreement, in part, because the seller failed to secure his wife's signature on the contract. This Court concluded that the purchase agreement was "void" and that "no valid contract was ever created" because the seller's wife had not waived her dower interest by signing the contract. *Id.* at 427-428, citing *Fields v Korn*, 366 Mich 108; 113 NW2d 860 (1962). In a manner inconsistent with its later decision in *Slater*, the *Berg* Court held that the contract was nullified, not that the purchaser took the title clouded by the seller's wife's dower interest.

*Berg* comports with Supreme Court decisions holding that a contract to transfer a fee interest in land is "void" absent signatures from all coowners of the property. See *Forge*, 458 Mich at 206 ("All owners of jointly held property must sign a contract conveying an interest in the property; the absence of a signature by a co-owner renders the contract void."); *Fields*, 366 Mich at 109-110 ("It is simple assumpsit to recover money paid on a contract which the applicable section of the statute of frauds says 'shall be void' [, MCL 566.108,] for want of required signature of the parties to be charged. . . . That word 'void' is the mandate of the statute. It means the ultimate of legal nullity.").

However, an inchoate dower interest is merely a potential future interest. If a wife survives her husband and has not waived her dower interest, she will become entitled to a one-third interest in the property. This is not an ownership interest that prevents a current transfer to another. As noted, it is possible that the wife's interest will never become consummate and the purchaser's rights will never be affected. Property law is equitable at its core and voiding a contract because of a murky potential interest can be unjust. In a manner consistent with this idea, our Supreme Court has held in many cases that the courts have the equitable power to enforce a conveyance even absent the participation of the seller's wife and have the power to value a dower interest's impact on the property.

In *Rhoades v Davis*, 51 Mich 306, 309; 16 NW 659 (1883), the Supreme Court noted that an inchoate dower right is not an "estate" but "it is a right concerning land, and one which possesses value." That value could be reduced to "a money value, and may be the object of sale and release." *Id.* at 310.

In *Walker*, 91 Mich 212, the plaintiff sued for specific performance of an oral agreement for the transfer of property owned by the defendant, her father.[3] She claimed that her father had promised her a deed to the property, while her father claimed that she was to be a tenant from year to year. *Id.* at 213-215. The defendant argued "that the contract [was] not enforceable, because [his] wife cannot be compelled to release her

---

[3] Although the claim was predicated on an oral agreement, the statute of frauds was not an issue, possibly because of the doctrine of partial performance. The plaintiff and her husband had sold their own property and turned the proceeds over to the defendant, who used the proceeds to buy another property. The defendant and his wife then moved from the disputed farmland to the new property and the plaintiff and her husband moved to the disputed farmland. *Walker*, 91 Mich at 213.

dower." *Id.* at 217. The Court disagreed, holding that while the defendant's wife "cannot be compelled to release her dower, there is no reason why [the plaintiff] may not have a decree for specific performance so far as defendant Kelly is concerned, and for compensation as to the dower interest of his wife." *Id.* at 217-218 (citation omitted).

In *Solomon v Shewitz*, 185 Mich 620; 152 NW 196 (1915), a man named Pierson entered into an agreement to sell property to the defendant within 30 days. Pierson's wife was purportedly a party to that agreement, but she did not sign it. *Id.* at 622-623. Pierson and his wife then sold the property to the plaintiff despite the earlier contract with the defendant. *Id.* at 623-624. The plaintiff sued the defendant to quiet title and the defendant sued the Piersons for specific performance. *Id.* at 624-626. The trial court ruled in the plaintiff's favor and the Supreme Court reversed. It held that Pierson's agreement with the defendant was a valid executory land contract, not an option, and that the plaintiff had notice of the contract. *Id.* at 629-630. The Court noted that Pierson's wife had an inchoate dower interest in the property at the time Pierson agreed to sell it to the defendant and that, because she was not a party to the land contract, she "cannot be compelled to release her dower in the land" and "is not a proper party to a bill by the purchaser for specific performance." *Id.* at 630-631. The Court took note of *Walker*, in which the plaintiff had been granted "specific performance, subject to the dower rights . . . where the wife was not a party to the contract," but also noted that specific performance "is not a matter of right" but a matter within the trial court's discretion. *Id.* at 631. It held, under the circumstances of the case, the defendant was not entitled to specific performance with an

abatement for the value of Mrs. Pierson's dower interest but was entitled to sue for damages. *Id.* at 631-632.

In *Gluc v Klein*, 226 Mich 175, 176; 197 NW 691 (1924), the defendant entered into a contract to sell certain lands to the plaintiffs. The defendant did not secure his wife's signature on the contract because she was residing in a psychiatric asylum in another state. The plaintiffs sought specific performance of the defendant's promise to convey title free and clear by warranty deed. *Id.* The Court held that "a perfect title to lands owned by" a man cannot be conveyed without his wife's barring her inchoate dower right. *Id.* at 177. The Court did not find the purchase contract void, simply that it could not be enforced to convey clear title.

In *Tandy v Knox*, 313 Mich 147; 20 NW2d 844 (1945), the defendant owned certain property that he agreed to sell to the plaintiff. The defendant's wife was not a party to the agreement. *Id.* at 149-151. The plaintiff took possession of the property and paid the defendant a substantial portion of the purchase price. *Id.* at 151. The agreement called for a land contract to be executed, but that was never effectuated because a dispute arose regarding how much of the property was covered by the agreement. *Id.* at 151-152. The plaintiff sued for specific performance. The trial court determined which part of the property was subject to the agreement and granted the plaintiff the option of specific performance or an accounting. The plaintiff elected specific performance and was granted an abatement of the purchase price equal to the value assigned to the defendant's wife's dower interest. *Id.* at 152-153. The Supreme Court modified and affirmed the decree of the trial court. *Id.* at 158. Regarding the dower issue, the Court stated:

> Because of the refusal of Mrs. Knox to join with her husband in the execution of a land contract, such contract

must be made subject to her inchoate right of dower. Recognizing the situation in this regard, the trial court held that plaintiff, if he elected to accept specific performance in lieu of an accounting, was entitled to an abatement of the purchase price in an amount equal to the present value of the inchoate dower interest, such value being fixed at the sum of $1,000. [*Id.* at 156.]

These cases all stand for the proposition that the transfer of a property interest may stand despite a husband's failure to secure the release of his wife's inchoate dower rights. There is no support therefore for a holding that Zaher's easement across lot 2 was invalid from the outset.

Further, this Court has held that a wife may bar her dower interest through a later transfer, thereby curing a defect in an earlier conveyance. In *M & D Robinson Co*, 12 Mich App at 7-8, the defendant owned a one-half interest in certain property that he agreed to sell to the plaintiff on land contract. The defendant was married but his wife did not join in the purchase agreement. *Id.* at 9-10. After the execution of the purchase agreement but before execution of a land contract, the defendant and his cotenant on the property became indebted to Lawyers Title Insurance Corporation. *Id.* at 8. In partial payment of the debt, the defendant assigned Lawyers Title his interest in the land contract that was to be executed. The defendant's wife participated in the Lawyers Title agreement and consented "to join with her husband in the execution of any and all instruments called for by" the assignment. *Id.* at 8-9.

Consistently with the previously discussed precedents, this Court agreed with the trial court that, even without the Lawyers Title contract, the plaintiff would have been entitled to specific performance of the agreement to execute a land contract "with damages for the cloud on title represented by the inchoate dower rights"

of the defendant's wife. *Id.* at 9-10, 12. This Court also agreed with the trial court's order to the defendant's wife to execute a land contract and thereby waive her dower rights relative to the land contract as she had promised to do in her consent to the Lawyers Title agreement. *Id.* at 12-13.

### C. APPLICATION TO THE CURRENT CASE

Applied to the facts now before this Court, the law dictates, and equity suggests, that Miotke cannot avoid Zaher's easement simply because Linda did not join Hoover's transfer of that interest. If Hoover still owned lot 2 and blocked Zaher's use of the joint driveway, Zaher could successfully file suit to enforce the easement. Hoover created the problem by failing to secure Linda's written consent at the time of the conveyance. To the extent that the easement may have reduced the value of lot 2, Hoover's estate could be required to recompense Linda in some way for the monetary effect on her dower interest, but only if Hoover predeceased Linda. Ultimately, however, the inchoate dower rights would not nullify the easement. Linda's dower rights are an encumbrance on the property separate from the encumbrance from the easement. The two are not directly contrary and can coexist.

But Hoover did transfer his ownership interest in lot 2 to Miotke with Linda's approval. Linda can no longer claim that the value of her dower interest was somehow affected by Zaher's easement; she no longer has a dower interest. Because Linda extinguished her dower rights to lot 2 by joining Hoover's conveyance to Miotke, those rights no longer impair lot 2 or sit in competition with Zaher's easement. Miotke might successfully challenge the easement on notice grounds, but Linda's extinct dower rights are not a defense available to him.

In summary, an inchoate dower interest is merely a potential future limited possessory interest in land. The interest can be valued and recompensed so that an improper transfer of a property interest without a wife's waiver of her inchoate dower interest can be enforced. Although Hoover's grant of an easement to Zaher violated the statute of frauds because Linda did not join it, the transfer was not void. In any event, Linda subsequently waived her dower interest when Hoover sold the property. Linda's former dower interest is not a defense available to Miotke in Zaher's action to enforce his claimed easement.

Affirmed.

GLEICHER, P.J., and SAWYER and FORT HOOD, JJ., concurred.